# DECISIONS

OF THE

# COURT OF APPEALS OF KENTUCKY.

## JANUARY TERM, 1887.

CASE 84—PETITION EQUITY—JANUARY 6.

# Southern Mutual Life Insurance Company v. Montague.

APPEAL FROM TAYLOR CIRCUIT COURT.

1. INSURANCE PAMPHLET A PART OF CONTRACT.—When an insurance company, through its chief officers, issues a pamphlet making representations as to the plans upon which it insures, and sends this pamphlet out by its soliciting agents, it is to be regarded as a part of the contract of insurance entered into upon the faith of the representations contained therein, and is to be considered in connection with the policy in determining what the contract was.

In this case the insured is entitled to a paid-up policy, although his original policy did not provide therefor, as a pamphlet issued by the company and exhibited by the soliciting agent for the purpose of inducing the insured to take insurance, represented that the company would issue such a policy.

2. PAID-UP POLICY—FORFEITURE.—Where a policy of life insurance provides that after the payment of a certain number of annual premiums the company will, in case of default, issue a paid-up policy in the event the old policy is surrendered within a certain time after default, the failure to surrender the old policy within the time provided will not forfeit the right to a paid-up policy, and in this respect there is no distinction between endowment policies and ordinary life policies.

In this case the time limited for the surrender of the old policy,

which was an endowment policy, was thirty days. It does not appear that that policy was ever surrendered, or any demand made for a paid-up policy until about the time this suit was instituted, March 29, 1881, more than five years after default. *Held*—That the assured has not forfeited his right to a paid-up policy.

3. THE EXECUTION BY THE INSURED OF HIS NOTE FOR AN UNPAID PRE-MIUM in consideration of which there was a written extension of the policy for twelve months, with the proviso that if the notes were not paid at maturity, the policy should "at once become void without notice to the assured," was but the continuation of the original contract, and not a new contract whereby the insured forfeited all rights under the original contract, and, therefore, his failure to pay the note at maturity did not deprive him of the right to a paid-up policy, provided for by the original contract.

The petition in this case was filed March 29, 1881.

WM. LINDSAY FOR APPELLANT.

1. If the oral representations and promises alleged to have been set out in the printed pamphlet can be tortured into an undertaking to issue a paid-up policy, it was a contract not possible to be performed within a year, not signed by the party to be charged, and, therefore, within the statute of frauds.

2. If the alleged representations deceived the assured into the acceptance of the policy, he might have rescinded the contract, but there can be no specific execution, in the absence of averment that the contract as made entitled the assured to the paid-up policy, and that the stipulation to that effect was left out of the writing by mistake, inadvertence or fraud.

3. As to policy No. 2826, the insured had the right to pursue either of two courses: either continue the policy in force for the full amount of the insurance so long as the dividends declared and unpaid, or dividend additions, and the value of the policy would keep it alive, or, at the election of the party to be benefited, he might, within thirty days from the default, have surrendered the old policy and demanded a new and paid-up policy. Remaining silent for thirty days (in this case more than three years), the insured is to be held to have elected to pursue the former of these two courses. (Attorney General v. Conn. Mut. Life Ins. Co., 93 N. Y., 70; Insurance Co. v. Robinson, 40 Ohio St., 273.)

The cases of Montgomery v. Phœnix Mut. Life Ins. Co., 14 Bush, 51, and Southern Mut. Life Ins. Co. v. Johnson, 79 Ky., explained and distinguished from this case.

(A petition for rehearing, filed in the Superior Court, which is referred to as a part of this brief, is not in the record.)

Southern Mutual Life Insurance Company v. Montague.

ROUNTREE & LISLE ON SAME SIDE

1. Admitting that the alleged representations were made, the subsequent application and policy make the whole completed contract which can not be added to, varied or contradicted. (1 Greenleaf on Evidence, section 275; Insurance Co. v. Mowry, 6 Otto, 548; Bliss on Life Insurance, section 271.)

2. Appellee agreed to a condition subsequent on the happening of which his policy became void, and equity should not relieve him. (Bliss on Life Insurance, section 181; New York Life Ins. Co. v. Statham, 3 Otto, 24; Robert v. N. E. Mut. Life Ins. Co., 1 Desney, 355; 2 Desney, 106.)

3. As to policy 2826, the insured should, at least, have demanded a paid-up policy within a reasonable time. (Southern Mut. Life Ins. Co. v. Johnson, 79 Ky., —.)

   It is to be determined in this case whether five years is a reasonable time.

4. Can the action be maintained without alleging any prior demand or any offer to surrender the policy?

5. If appellee is entitled to a paid-up policy for either or both of his policies, the amount adjudged by the court is largely in excess of the correct sum.

R. S. MONTAGUE FOR APPELLEE.

1. The representations made by appellant's agent and set out in the pamphlet exhibited by him, form a part of the contract between the parties, and entitle appellee to a paid-up policy for policy 127.

2. The clause in the note executed by appellee, providing that the policy should " cease and determine," if he made default in the payment of the note, did not deprive him of the right to a paid-up policy upon his failure to pay the note at maturity. (Montgomery v. Phœnix Mutual Life Ins. Co., 14 Bush, 58.)

3. If the company had a right to declare a forfeiture of the policy upon appellee's failure to pay the note at maturity, the company waived that right by holding on to the note. (Montgomery v. Phœnix Mutual Life Ins. Co., 14 Bush, 58.)

4. As to policy 2826, it was not necessary that appellee should deliver up the original policy within thirty days, in order to entitle him to a paid-up policy. (Hancock v. Southern Mutual Life Ins. Co., MS. Op., October 25, 1878.)

5. The judgment is not for too large an amount.

CHIEF JUSTICE PRYOR DELIVERED THE OPINION OF THE COURT.

In the month of December, in the year 1866, the Southern Mutual Life Insurance Company issued its

policy of insurance for $2,000 on the life of R. S. Montague. The annual premium was $70, and was paid from year to year until the year 1875, when a balance was left unpaid, for which Montague executed his note, due in eleven months from the 7th of December, 1875, with eight per cent. interest until paid.

On the 24th of October, 1871, the company issued another policy for $2,000 on the life of Montague, the annual premium being $86.26, and payable to his wife. The first policy was No. 127 and the second policy No. 2826. The premiums on this last policy were paid from its date, and annually thereafter until October 24th, 1874, when a note was given by the appellee to the company for $72.96, due in nine months, and bearing eight per cent. interest.

The two notes provided that, in consideration of their execution, the policies are continued until default of payment is made, when they shall cease and determine. When each of the notes for the premium unpaid on each policy was executed, there was a written extension of each policy for twelve months, with the proviso that if the notes were not paid at maturity, "*the said policy shall at once become void without notice to the assured.*" These notes were never paid, and the appellees claiming that, by the terms of the contract made between the appellee Montague and the general agent of the company, he was entitled to a paid-up policy to the extent of the premiums paid for the period covered by the original policies, demanded that the company should comply with its agreement, and the latter refusing, this petition in equity was filed, asking that the company be compelled to issue paid-

Southern Mutual Life Insurance Company v. Montague.

up policies in accordance with their undertaking. The relief was granted and the company has appealed.

It is contended by the appellant (the company) that nowhere in policy 127 is to be found any provision for a paid-up policy; but that, on the contrary, it is provided in the policy itself, "that if the assured makes default in paying the annual premiums, the company shall not be liable to pay the policy, or any part of it, but it shall cease and determine, and all payments made thereon, and dividend credits accruing thereon, shall be forfeited to the company," and that in the extension of time given for payment, it was expressly provided that the policy should be void if the notes were not paid at maturity.

We find no provision in policy 127, or in the application made by the assured, by which he is entitled to a paid-up policy to the extent of premiums paid; but in policy 2826 it is provided, "that after the payment of two *full* annual premiums, if the policy is surrendered within thirty days after default in payment of any subsequent premiums, the assured is entitled to a paid-up policy on the basis fixed by the agreement of insurance."

As the two policies contain different stipulations, we will consider first the right of the appellee to the relief sought as to policy 127.

It is maintained by the company that the import and meaning of this policy is plainly expressed in writing, and that its terms can not be varied or changed in any manner by parol testimony; and recognizing fully the importance of adhering to this principle in its application to written agreements, we will proceed to notice

vol. 84—42

the pleadings in this case, and the reasons assigned by the appellee for the relief he is seeking.

At the time the general agent of the company solicited the insurance from the appellee (policy 127), he presented and delivered to him a pamphlet issued by the company, with the names of its officers and executive committee indorsed upon it, setting forth the nature and advantage of life insurance, and particularly in the Southern Mutual Life Insurance Company; the pamphlet setting forth the benefits to be derived from a policy that would always be of value for surrender to the company when the assured was no longer able to pay. This pamphlet reads: "Persons holding policies of insurance should never relinquish them without first communicating with the office, as policies have a money value. Those desiring to discontinue payments of the annual premiums may, after the payment of *four annual premiums* on the life plan, or two on the ten-year or endowment plans, dispose of their policies to the company, in which case they will receive the equitable value, either in cash or a policy of insurance will be issued for a fixed sum, payable at death. During his life his policy will always be of value for surrender. All policies issued by this company for life participate in its surplus or profits, and the annual division of this surplus will be made in the most equitable manner among the policy-holders, under the provision of the charter of the company."

It is further expressly stated as to ordinary life policies, that "after *four annual payments* have been received by the company, a paid-up policy for the amount of the cash premiums in excess of the actual

cost of insurance, for the period covered by the policy, will be issued to the person insured on the basis of single payment in table No. 4, for term of life, by limited payments, if the circumstances of the assured render such change necessary or. desirable.''

This plan of insurance the company, through its chief officers, presented to the people of the State, by its authorized agents, with insurance policies drafted in the manner and form as the one delivered to the appellee. It is not pretended that any part of this pamphlet was embodied in the insurance policy, but it is alleged by the appellee that it was represented by the agent of the company that the stipulations in said pamphlet formed a part of the contract, and that after the payment of the premiums, four in number, the policy could not be forfeited to the extent of the payments made. The appellee paid nine premiums and failed to pay the tenth, and it is now claimed that he is not entitled to a paid-up policy because the verbiage of the pamphlet was not embodied in the policy. The fact of the exhibition of the pamphlet, and the representations made by the company's agent, which are admitted by the appellant, and established by the testimony of the agent whose duty it was to solicit subscriptions upon the representations contained in it, made that a part of the agreement. It was not the representations, in fact, of the agent, but the statements of the principal made when the contract was entered into, as an inducement for the appellee to take the insurance and pay the premium. It was not made a part of the policy that was to be signed by the company, because it had already been executed by its chief officers as containing the terms, or a part at least,

upon which every insurance policy was issued, the terms varying to suit the mode of insurance adopted. The printed pamphlet was not only the inducement, but formed a part of the consideration for which the premium notes were executed and the contract entered into by the assured.  The rights of the assured under it was the prime cause for his accepting the policy, and gave the appellant as an insurance company, as it maintained, the preference over all others, and to hold that it was not intended as a part of the contract would be sustaining a fraud that no court of conscience could sanction.

The insured can not claim the policy valid to the extent of the original insurance, because his failing to pay the premiums has forfeited that right; but having paid four full annual premiums, he is entitled to a paid-up policy to the extent of the premiums paid, less the cost of insurance as provided by the contract.

It is insisted, however, that by the execution of the note for forty-seven dollars, the default payment, a new contract was made by which he forfeited all rights under the contract.  That was but a continuation of that contract for eleven months longer.  If he had paid the note and kept his policy alive, the right to the amount of the policy in those entitled at his death would have existed; but as he failed to do so, the policy became void except to the extent of the premiums paid.

It is urged that by the terms of the policy the appellee forfeits all right to the premiums paid when he is in default as to subsequent premiums, and that this writing, being inconsistent with the printed pamphlet, prevail.

We think the two are easily reconciled, and are not led to believe that this company has issued the pamphlet in question with a view of deceiving the public, for by the one the payment of four premiums makes the policy valuable to that extent, and by the other every payment previously made is forfeited when a default in payment occurs. The two construed as one, mean only that a forfeiture occurs when the payment made are not sufficient to entitle the assured to a paid-up policy.

Any other construction works a forfeiture in all cases of default, when the company (and not the agent) has said to the assured that you shall not be deprived of your money without deriving any benefits after you have paid us as many as four full premiums. This construction was evidently placed upon the contract by the appellant, as the testimony clearly shows. When the policy for the two thousand dollars had terminated by reason of the default in paying the note, the assured wrote to the company desiring to make payment and keep the policy alive.

To this letter a response was made, acceding to his wishes, but on the condition that he would waive his right to a paid-up policy. If no such right existed, why make such a demand. It is true the company asserted its right to forfeit all the money that had been paid, and was claiming that no such thing as a paid-up policy could be demanded by the appellee, but this was in direct conflict with the statements made to the assured, not by the agent, but by the company when he was induced to accept the policy. It was this liberal provision that made insurance in such a com-

pany desirable, and afforded that protection to the
assured to which he was in justice entitled, and no
waiver of the right already vested in the appellee to
demand a paid-up policy would have been insisted on
but for the statements contained in the pamphlet upon
which the insurance in fact was accepted.

As to policy No. 2826, this court, in the case of Mont-
gomery v. The Phœnix Insurance Company, 14 Bush,
51, decided the question involved. By the terms of
policy 2826, the company agreed that, after two full
annual premiums had been paid, if the policy was
surrendered within thirty days after default as to sub-
sequent payments, it would issue a paid-up policy for
an amount proportionate to the number of years paid.
This is termed in the pamphlet a non-forfeitable pol-
icy, but the policy itself forfeits the entire amount
paid if not surrendered within thirty days after de-
fault made.

This court, in the case of Montgomery v. The Phœ-
nix Insurance Company, above, declined to enforce
such a forfeiture, and while a distinction is attempted
to be drawn between endowment policies and ordinary
life policies in determining the right of forfeiture, we
are unable to perceive any. In the case cited, the sur-
render of the old policy was to be made within twelve
months. It never was surrendered or the note paid,
the assured dying two years after its execution. The
same argument was made in that case as in this, that
the failure to surrender the old policy was a non-com-
pliance with the contract, and the forfeiture should be
enforced. This court said: "The premiums, by express
convention, paid for both current insurance and a paid-

up policy, and now to deny the assured the benefit of a paid-up policy because the old one was not surrendered in time, is, in the strictest and most obnoxious sense, a forfeiture. Such a claim is without support in reason, justice or authority, and can not be sanctioned in a court of equity."

The case of the St. Louis Mutual Life Insurance Co. v. Grigsby, reported in 10 Bush, 310, was but followed in the case against the Phœnix Insurance Company, and both sustain the right of recovery on policy 2826.

We recognize the necessity for the prompt payment of premiums as they mature to enable insurance companies to comply with their contracts, and the right of the company to contract for a forfeiture upon the failure of the assured to pay; but here the company, by an agreement with the assured, has provided by its contract that, although the assured may be in default, if, before the default occurs, he has paid as many as four full annual premiums in the one case and two in the other, he shall be entitled to a paid-up policy. Such was the contract, and it should be enforced.

As to the basis adopted by the court below for ascertaining the amount of the paid-up policy to which the appellee was entitled by reason of the payment of premiums on both policies, we are unable to say whether it was or not erroneous, as the manner of calculation is not before us.

The appellee was entitled to participate in the profits or dividends, and those profits or dividends were applied to the liquidation of the premium notes that had been executed.

The assured had made cash payments amounting to

at least five hundred dollars; he was a member of the company and entitled to a portion of the dividends; was about forty-eight years of age when he had paid his four full premiums, and has been given, by the judgment below, a paid-up policy for seven hundred and ninety-seven dollars. To this he was entitled.

Judgment affirmed.